## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

---

ARCHIE AND MARLENE MCGINLEY,

                        **Plaintiffs**

v.                                                        **CA. NO.**

EQUIFAX INFORMATION SERVICES, LLC.,

EXPERIAN INFORMATION SOLUTIONS, INC.,

SELECT PORTFOLIO SERVICING, INC.

and

TD BANK, N.A.,

                        **Defendants**

---

## COMPLAINT

### INTRODUCTION

       This is an action for actual, statutory and punitive damages, costs and attorney's fees brought by the plaintiffs, Archie and Marlene McGinley, for violation of (a) the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. and the Maine Fair Credit Reporting Act 10 M.R.S.A. §1306 et seq. (all defendants); (b) the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. § 524 (TD Bank and SPS); and (c) the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 et seq. and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§11001 et seq. (SPS).

### JURISDICTION

       1.     The jurisdiction of this Court is conferred by 10 M.R.S.A. §1310-E, 15 U.S.C. §1681p, 28 U.S.C. §1331 and §1367.  Venue is proper as all relevant events occurred in this District and Defendants were doing business in Maine during all relevant times.

## PARTIES

2.      Plaintiff, Archie McGinley, is a natural person and resident of the State of Maine.  He is a "consumer" as defined by 10 M.R.S.A. §1308(2), 15 U.S.C. §1681a(c), 32 M.R.S.A. §11002(3), and 15 USC 1692a(3).

3.      Plaintiff, Marlene McGinley, is a natural person and resident of the State of Maine. She is a "consumer" as defined by 10 M.R.S.A. §1308(2), 15 U.S.C. §1681a(c), 32 M.R.S.A. §11002(3), and 15 USC 1692a(3).

4.      Upon information and belief, Equifax Information Services, LLC ("Equifax") is a company authorized to do business in the State of Maine through its registered agent's office.

5.      Upon information and belief, Equifax is a "consumer reporting agency" as defined in 10 M.R.S.A. §1308(3) and 15 U.S.C. §1681a(f).

6.      Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 10 M.R.S.A. §1308(3) and 15 U.S.C. §1681a(d), to third parties.

7.      Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

8.      Upon information and belief, Defendant Experian Information Solutions, Inc. ("Experian") is a corporation authorized to do business in the State of Maine through its registered agent's office.

9.      Upon information and belief, Experian is a "consumer reporting agency" as defined in 10 M.R.S.A. §1308(3) and 15 U.S.C. §1681a(f).

10.      Upon information and belief, Experian is regularly engaged in the business of

assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 10 M.R.S.A. §1308(3) and 15 U.S.C. §1681a(d), to third parties.

11.     Upon information and belief, Experian disburses such consumer reports to third parties under contract for monetary compensation.

12.     Upon information and belief, TD Bank, N.A. ("TD Bank") is a national bank doing business in the State of Maine.

13.     At all times relevant to this action, TD Bank was a furnisher of consumer information to Defendants Equifax and Experian and other consumer reporting agencies, and furnished information relating to Plaintiffs and an automobile loan they had with TD Bank.

14.     Upon information and belief, Select Portfolio Servicing, Inc. ("SPS") is a real estate loan servicer doing business in the State of Maine.

15.     At all times relevant to this action, Defendant SPS was a furnisher of consumer information to Defendants Equifax and Experian and other consumer reporting agencies, and furnished information relating to Plaintiffs and an alleged real estate loan originated by Mortgage Network, Inc. and, upon information and belief, assigned to Chase Home Finance, LLC ("Chase") and later to U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Trust 2007-S3.

16.     SPS began servicing the loan when it was already in default.

17.     SPS engages in the business of collecting debts in this state.

18.     SPS engages in the collection of debts using the mails and/or the telephone, and regularly attempts to collect debts alleged to be due another.

19.     SPS is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. §1692a(6), 32 M.R.S.A. §§11002(6) and 11003(7)(C).

## FACTS

20.    Plaintiffs filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Maine, Case No. 10-22026 on December 8, 2010 (hereinafter referred to as "McGinley bankruptcy").

21.    Included as debts in the McGinley bankruptcy were a 2008 automobile loan owed to TD Bank ("TD Bank Car Loan") and a 2007 mortgage loan serviced by and eventually held by Chase Home Finance ("Mortgage Loan") (Doc. number 1 in the McGinley bankruptcy).

22.    The Mortgage Loan had been in default since at least September 2010.

23.    TD Bank and Chase were listed on and received the Certificate of Notice dated December 12, 2010, for the filing of Plaintiffs' Chapter 13 bankruptcy (Doc. number 9 in the McGinley bankruptcy).

24.    On February 14, 2011, TD Bank filed a Proof of Claim in the bankruptcy in the amount of $12,665.38 for the TD Bank Car Loan (Claim number 10-1 in the McGinley bankruptcy).

25.    On February 28, 2011, Chase filed a Proof of Claim in the bankruptcy for the Mortgage Loan (Claim number 11-1 in the McGinley bankruptcy).

26.    Per the Order on the Motion to Allow and Disallow Claims dated February 28, 2012, the McGinleys paid, through the trustee, the TD Bank Car Loan (keeping the car) and surrendered the real estate secured by the Mortgage Loan (Doc. number 48 in the McGinley bankruptcy).

27.    The McGinleys had already moved out of the property on May 1, 2010.

28.    Upon information and belief, on or around August 1, 2013, SPS took over as servicer for the Mortgage Loan.

29.    On November 20, 2014 U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Trust 2007-S3 filed a Transfer of Claim Other Than For Security in the McGinley

bankruptcy reporting that Chase had transferred the loan to SPS and that notices and payments should be sent to SPS.

30.     On March 24, 2015 the McGinleys received their bankruptcy discharge (Doc. number 73 in the McGinley bankruptcy).  TD Bank, Chase, and US Bank National Associate, as Trustee, c/o SPS received notice of the discharge. Id.

31.     On August 5, 2015, the Trustee filed his final report showing that both TD Bank and Chase then SPS had received all payments allowed under the bankruptcy plan (Doc. number 78 in the McGinley bankruptcy).

32.     As a result of the discharge, Plaintiffs were no longer personally liable to pay amounts allegedly owed on the Mortgage Loan or the TD Bank Car Loan.

33.     After the discharge, TD Bank failed to return the vehicle title to the McGinleys.  Mrs. McGinley had to call TD Bank several times to request the wrongfully withheld title which was finally returned months later.

34.     In December 2015 the McGinleys received a series of approximately five telephone calls from SPS in reference to the Mortgage Loan which had been discharged.

35.     In January 2016 the McGinleys began looking for financing to purchase a new home and applied to Regency Mortgage Corporation for pre-approval.

36.     As a disabled Vietnam veteran, Mr. McGinley should have been eligible for a mortgage through the Department of Veterans Affairs with more lenient than usual underwriting standards, including for the amount of time which had passed since a bankruptcy.

37.     On January 8, 2016 Regency pulled a credit report on the McGinleys from Birchwood Credit Services, Inc. ("Birchwood").

38.     As a result of this report the McGinleys learned that SPS was reporting them on a

monthly basis as 180 days past due, with an unpaid balance of $94,762 and with no notation that the account had been discharged in bankruptcy to one or more credit reporting agencies.

39.    As a result of this report the McGinleys learned that TD Bank was reporting an unpaid balance of more than $1,300 on the discharged TD Bank Car Loan to one or more credit reporting agencies.

40.    The SPS reporting was inaccurate because any remaining liability the McGinleys had on their mortgage loan had been discharged so they were not delinquent, did not have an unpaid balance and the account should have been reported as included in bankruptcy.

41.    The TD Bank reporting was inaccurate because any remaining liability the McGinleys had on their car loan had been discharged.

42.    In January 2016 the McGinleys applied to Guaranteed Rate for pre-approval for a mortgage.

43.    Guaranteed Rate pulled a credit report from CBC Innovis which included the inaccurate SPS and TD Bank credit information.

44.    In early February 2016 Regency Mortgage arranged a conference call with the McGinleys, Birchwood and SPS to try to get the SPS credit reporting corrected.

45.    During this call SPS was notified of the reporting dispute but the inaccurate reporting was not corrected.

46.    In February 2016, Mr. McGinley disputed the erroneous SPS information pursuant to the FCRA to Experian using the online dispute procedure.  He provided proof of his bankruptcy to Experian.

47.    Upon information and belief Experian forwarded the dispute to SPS pursuant to FCRA procedures.

48.     Experian subsequently notified Mr. McGinley that SPS continued to report the account as open with a past due balance and no notation that the account was included in bankruptcy and Experian continued to report the disputed information.

49.     Because of the inaccurate information on their credit reports Regency was unable to obtain financing for the McGinleys.

50.     Because of the inaccurate information on their credit reports Guaranteed Rate was unable to obtain financing for the McGinleys.

51.     On April 7, 2016 the McGinleys each sent a letter to Trans Union disputing the inaccurate SPS information pursuant to the FCRA and attaching supporting documents from the bankruptcy.

52.     Upon information and belief Trans Union forwarded the disputes to SPS pursuant to FCRA procedures.

53.     On April 19, 2016 Trans Union notified Mr. McGinley that it was deleting the SPS tradeline from his credit report.

54.     Upon information and belief Trans Union also deleted the SPS tradeline from Mrs. McGinley's report.

55.     On April 7, 2016 the McGinleys each sent a letter to Experian disputing the inaccurate SPS information pursuant to the FCRA and attaching supporting documents from the bankruptcy.

56.     Upon information and belief Experian forwarded the dispute to SPS pursuant to FCRA procedures.

57.     On or about April 10, 2016 Mrs. McGinley was denied a credit card with Citibank after a review of her Experian report.

58.     On or about April 26, 2016, Experian wrote to Mr. McGinley reporting that the SPS

tradeline had been updated.  However, the tradeline continued to show that SPS was reporting monthly that he had an open account, an unpaid balance of $94,763, $52,472 of which was more than 180 days past due and showed no bankruptcy notation.

59.   All of this information was inaccurate.

60.   Experian continued to report the disputed, inaccurate information.

61.   On or about April 27, 2016, Experian wrote to Mrs. McGinley reporting that the SPS tradeline had been updated.  However, the tradeline continued to show that SPS was reporting monthly that she had an open account, an unpaid balance of $94,763, $52,472 of which was more than 180 days past due and showed no bankruptcy notation.

62.   All of this information was inaccurate.

63.   Experian continued to report the disputed, inaccurate information.

64.   On April 7, 2016 the McGinleys each sent a letter to Equifax disputing the inaccurate TD Bank information and the inaccurate SPS information pursuant to the FCRA and attaching supporting documents from the bankruptcy.

65.   Upon information and belief Equifax forwarded the dispute to TD Bank pursuant to FCRA procedures.

66.   Upon information and belief Equifax forwarded the dispute to SPS pursuant to FCRA procedures.

67.   On or about April 25, 2016, Equifax wrote to Mr. McGinley reporting that TD Bank had verified the inaccurate information and Equifax continued to report the disputed balance information.

68.   On or about April 25, 2016, Equifax wrote to Mrs. McGinley reporting that TD Bank had verified the inaccurate information and Equifax continued to report the disputed balance

information.

69.     On or about April 25, 2016, Equifax wrote to Mr. McGinley reporting that the SPS tradeline had updated to show that the account was included in bankruptcy and had a $0 balance but it still showed an account history of being more than 180 days late every month through March 2016.

70.     This information was misleading and inaccurate because the account had been discharged in March 2015.

71.     Equifax continued to report the misleading, inaccurate and disputed information.

72.     On or about April 25, 2016, Equifax wrote to Mrs. McGinley reporting that the SPS tradeline had updated to show that the account was included in bankruptcy and had a $0 balance but it still showed an account history of being more than 180 days late every month through March 2016.

73.     This information was misleading and inaccurate because the account had been discharged in March 2015.

74.     Equifax continued to report the misleading, inaccurate and disputed information.

75.     On or around April 11, 2016, Defendant TD Bank received a letter from Plaintiffs' counsel, Molleur Law Office.  The letter, dated April 7, 2016, provided Defendant TD Bank with notice of Plaintiffs' bankruptcy and the discharge of their debt.  Plaintiffs' counsel requested that Defendant TD Bank cease reporting inaccurate information regarding Plaintiffs to the credit reporting agencies.  A true and accurate copy of this letter with proof of delivery is attached hereto as Exhibit 1.

76.     TD Bank did not respond to the letter.

77.     On or around April 8, 2016, SPS received a Qualified Written Request (QWR) and Request for Information (RFI) from Plaintiffs' counsel, Molleur Law Office, pursuant to 12 CFR §1024.36 dated March 29, 2016 seeking information regarding the loan account including the owner of the loan, the date SPS took on servicing of the loan, and a loan history.

78.    On or around April 11, 2016, SPS received a discharge violation warning letter from Plaintiffs' counsel, Molleur Law Office.  The letter, dated April 6, 2016, provided SPS with notice of Plaintiffs' bankruptcy and the discharge of their debt.  Plaintiffs' counsel requested that SPS cease reporting inaccurate information regarding Plaintiffs to the credit reporting agencies.  A copy of this letter is attached hereto as Exhibit 2.

79.    In a letter dated April 12, 2016, SPS acknowledged receipt of the QWR letter and stated they would provide a written response and resolution within 30 days.

80.    In a letter dated April 13, 2016, SPS acknowledged receipt of the discharge violation warning letter and stated they would provide a written response and resolution within 30 days.

81.    On April 14, 2016, SPS delivered a Mortgage Statement to the McGinleys, c/o Molleur Law Office, seeking a "regular monthly payment" of $733.71 and "past due payments" of $52,376.31 with an alleged "Total Amount Due" of $71,892.56 and included a Monthly Payment Coupon.  The April 2016 statement is attached hereto as Exhibit 3.

82.    In a letter dated April 22, 2016, SPS acknowledged receipt of the discharge violation warning letter and stated they would provide a written response and resolution within 15 days.

83.    In a letter dated April 25, 2016, SPS responded to the QWR and RFI and acknowledged that its records reflected Plaintiffs' bankruptcy and discharge and that the credit reporting agencies were reporting inaccurate information.

84.    After the April disputes, SPS has continued to report inaccurate information to one or more credit reporting agencies.

85.    SPS has failed to note Plaintiffs' continuing dispute in its credit reporting.

86.    On May 2, 2016, the McGinleys, through counsel, delivered a follow-up QWR/RFI to SPS based on the April 25, 2016 Response.  The McGinleys sought all documentation SPS had

provided to the credit reporting agencies regarding the loan, all copies of the McGinleys' credit reports that SPS had reviewed, the incorrect information being reported, and the requests sent to the credit reporting agencies asking them to correct the information.  A copy of the letter is attached hereto as Exhibit 4.

87.     SPS responded to the QWR/RFI on May 20, 2016 stating it would review and respond in 30 days.

88.     In a letter SPS delivered on May 27, 2016, they stated they could not respond to the QWR/RFI for 60 days.

89.     To date, SPS had not provided the information requested in the May 5, 2016 QWR/RFI.

90.     SPS has continued to send monthly mortgage statements, including statements dated May 13, 2016, June 14, 2016 and September 14, 2016 to the McGinleys c/o Molleur Law Office asserting that they are late on their mortgage payments, owe a total of over $73,000.00 and threatening legal action.   Copies of the statements are attached hereto as Exhibits 5-7.

91.     Plaintiffs have been hoping to qualify for a VA loan since March 24, 2016 when their bankruptcy discharge was one year old.

92.     Because of the inaccurate TD Bank and SPS information on their credit reports Plaintiffs have been unable to qualify for a mortgage loan.

93.     The original house that the McGinleys were interested in purchasing has been sold and they have been unable to put in an offer on any other houses because they know they will not be able to get financing due to the inaccurate information which remains on their credit reports.

94.     The McGinleys have been denied other credit, have had to pay more for credit and/or were offered more onerous terms at least substantially because of the erroneous TD Bank and SPS

information on their credit reports.

95.     The McGinleys have lost the benefit of their fresh start after bankruptcy, have had to pay for one or more credit reports, have been forced to repeatedly apply for credit resulting in extra inquiries on their credit reports, and have experienced additional actual damages including, but not limited to, damage to their creditworthiness and credit score, marital strain, loss of sleep and emotional distress as a result of the defendants' actions and inactions.

96.     As set forth above, TD Bank furnished inaccurate information relating to Plaintiffs to one or more consumer reporting agencies including Defendant Equifax.

97.     As set forth above, SPS furnished inaccurate information relating to Plaintiffs to one or more consumer reporting agencies including Defendants Equifax and Experian.

98.     As set forth above, Plaintiffs communicated on one or more occasions to Defendant Equifax a dispute over the accuracy of its reports relating to the TD Bank and SPS tradelines and provided Equifax with supporting documentation.

99.     Equifax received Plaintiffs' dispute, but wholly and entirely failed to conduct the reinvestigation required by law.

100.    Upon information and belief, Defendant Equifax notified TD Bank of Plaintiffs' dispute regarding the tradeline and requested TD Bank to investigate and verify or correct the information.

101.    Upon information and belief, Defendant Equifax notified SPS of Plaintiffs' dispute regarding the tradeline and requested SPS to investigate and verify or correct the information.

102.    TD Bank knew that the disputed information was inaccurate.

103.    SPS knew that the disputed information was inaccurate.

104.    Upon information and belief, TD Bank failed to conduct a reasonable investigation and

responded to Equifax's request for verification of the tradeline by wrongly verifying inaccurate information.

105.    Upon information and belief, SPS failed to conduct a reasonable investigation and responded to Equifax's request for verification of the tradeline by wrongly verifying and/or failing to correct misleading or inaccurate information.

106.    After receiving Plaintiffs' notice of the inaccuracy and within the two years preceding the filing of this action, Equifax prepared and published to third parties one or more inaccurate consumer reports about Mr. McGinley that contained the inaccurate derogatory TD Bank and SPS tradelines.

107.    After receiving Plaintiffs' notice of the inaccuracy and within the two years preceding the filing of this action, Equifax prepared and published to third parties one or more inaccurate consumer reports about Mrs. McGinley that contained the inaccurate derogatory TD Bank and SPS tradelines.

108.    As set forth above, Plaintiffs communicated on one or more occasions to Defendant Experian a dispute over the accuracy of its reports relating to the SPS tradeline and provided Experian with supporting documentation.

109.    Experian received Plaintiffs' disputes, but wholly and entirely failed to conduct the reinvestigation required by law.

110.    Upon information and belief, Defendant Experian notified SPS of Plaintiffs' disputes regarding the tradeline and requested SPS to investigate and verify or correct the information.

111.    SPS knew that the disputed information was inaccurate.

112.    Upon information and belief, SPS failed to conduct a reasonable investigation and responded to Experian's request for verification of the tradeline by wrongly verifying inaccurate

information.

113.    After receiving Plaintiffs' notice of the inaccuracy and within the two years preceding the filing of this action, Experian prepared and published to third parties one or more inaccurate consumer reports about Mr. McGinley that contained the inaccurate derogatory SPS tradeline.

114.    After receiving Plaintiffs' notice of the inaccuracy and within the two years preceding the filing of this action, Experian prepared and published to third parties one or more inaccurate consumer reports about Mrs. McGinley that contained the inaccurate derogatory SPS tradeline.

115.    Defendants willfully or, in the alternative, negligently failed to comply with the requirements of the FCRA, and, in doing so, violated Plaintiffs' rights.

116.    Defendants' violation of Plaintiffs' rights under the FCRA caused Plaintiffs actual damages.

117.    Upon information and belief, SPS, TD Bank, Experian and Equifax do not maintain adequate policies and procedures to ensure compliance with the Maine and Federal FCRAs, as evidenced by the conduct alleged herein

118.    Upon information and belief, SPS, TD Bank, Experian and Equifax have engaged in a pattern and practice of noncompliance with the Maine and Federal FCRAs particularly the conduct alleged herein.

119.    Defendants are each liable to Plaintiff for actual damages including compensatory and emotional distress damages, statutory damages and, for willful violations, treble or greater punitive damages against each Defendant as provided under the Maine and Federal FCRAs.

120.    TD Bank received notice of Plaintiffs' discharge on multiple occasions but continued to report inaccurate credit information in violation of the discharge injunction.

121.    SPS received notice of Plaintiffs' discharge on multiple occasions but continued to

report inaccurate credit information and take other collection actions in violation of the discharge injunction.

122.    SPS has reported false information regarding Plaintiffs to one or more credit reporting agency and has failed to report the Mortgage Loan as disputed within the last year in violation of the Maine and Federal FDCPA.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACTS
### 15 U.S.C. §1681e(b) and 10 M.R.S.A. §1309(1)
### (Equifax and Experian)

123.    The Plaintiffs reallege and incorporate the preceding paragraphs as if fully set out herein.

124.    Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiffs' credit reports and credit files they published and maintain concerning the Plaintiffs.

125.    As a result of the conduct, actions and inactions of Equifax, the Plaintiffs suffered actual damages including, without limitation, loss of credit, costs associated with purchasing credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

126.    Plaintiffs have each suffered a concrete injury in fact that is directly traceable to Equifax's conduct, and is likely to be redressed by a favorable decision in this action.

127.    Equifax's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Equifax was negligent, entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

128.    Equifax's conduct is also in violation of the Maine FCRA, 10 M.R.S.A. §1309(1), for failure to comply with the federal FCRA.

129.     The Plaintiffs are each entitled to recover actual, statutory, and treble or greater punitive damages, and costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 10 M.R.S.A. §1310-C & D and 15 U.S.C. §§1681n and o.

130.     Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiffs' credit reports and credit files they published and maintain concerning the Plaintiffs.

131.     As a result of the conduct, actions and inactions of Experian, the Plaintiffs suffered actual damages including, without limitation, loss of credit, costs associated with purchasing credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

132.     Plaintiffs have each suffered a concrete injury in fact that is directly traceable to Experian's conduct, and is likely to be redressed by a favorable decision in this action.

133.     Experian's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Equifax was negligent, entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

134.     Experian's conduct is also in violation of the Maine FCRA, 10 M.R.S.A. §1309(1), for failure to comply with the federal FCRA.

135.     The Plaintiffs are each entitled to recover actual, statutory, and treble or greater punitive damages, and costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 10 M.R.S.A. §1310-C & D and 15 U.S.C. §§1681n and o.


**COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT**
**§15 U.S.C. 1681i**
**(Equifax and Experian)**

136.    The Plaintiffs reallege and incorporate the preceding paragraphs as if fully set out herein.

137.    Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from the Plaintiffs' credit files.

138.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of the Plaintiffs' disputes to TD Bank and/or by failing to include all relevant information regarding the Plaintiffs' disputes.

139.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of the Plaintiffs' disputes to SPS and/or by failing to include all relevant information regarding the Plaintiffs' disputes.

140.    Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiffs.

141.    Equifax violated 15 U.S.C. §1681i(a)(5) by failing to promptly delete the disputed inaccurate items of information from Plaintiffs' credit files or modify the TD Bank reporting information upon an accurate reinvestigation.

142.    Equifax violated 15 U.S.C. §1681i(a)(5) by failing to promptly delete the disputed inaccurate items of information from Plaintiffs' credit files or modify the SPS reporting information upon an accurate reinvestigation.

143.    As a result of the conduct, actions and inactions of Equifax, the Plaintiffs suffered actual damages including, without limitation, loss of credit, costs associated with purchasing credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

144.    Plaintiffs have each suffered a concrete injury in fact that is directly traceable to Equifax's conduct, and is likely to be redressed by a favorable decision in this action.

145.    Equifax's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Equifax was negligent, entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

146.    The Plaintiffs are entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n and o.

147.    Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from the Plaintiffs' credit files.

148.    Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of the Plaintiffs' disputes to SPS and/or by failing to include all relevant information regarding the Plaintiffs' disputes.

149.    Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiffs.

150.    Experian violated 15 U.S.C. §1681i(a)(5) by failing to promptly delete the disputed inaccurate items of information from Plaintiffs' credit files or modify the SPS reporting information upon an accurate reinvestigation.

151.    As a result of the conduct, actions and inactions of Experian, the Plaintiffs suffered actual damages including, without limitation, loss of credit, costs associated with purchasing credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

152.     Plaintiffs have each suffered a concrete injury in fact that is directly traceable to Experian's conduct, and is likely to be redressed by a favorable decision in this action.

153.     Experian's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Experian was negligent, entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

154.     The Plaintiffs are entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n and o.

## COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACTS
### §15 U.S.C. 1681s-2(b) and 10 M.R.S.A. §1309(1)
### (TD Bank and SPS)

155.     The Plaintiffs reallege and incorporate the preceding paragraphs as if fully set out herein.

156.     Within two years prior to the filing of this suit, by example only and without limitation, TD Bank violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(A) and/or (B) by failing to fully and properly investigate the Plaintiffs' disputes of its credit reporting after receipt of notice of such disputes from Equifax and/or failing to review all relevant information provided.

157.     Within two years prior to the filing of this suit, by example only and without limitation, TD Bank violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(C) by failing to accurately and completely report the results of a lawful investigation to Equifax after notice of a dispute.

158.     Within two years prior to the filing of this suit, by example only and without limitation, TD Bank violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(D) by failing to report results of its investigation finding the information it had been reporting regarding Plaintiffs to

be incomplete or inaccurate to all other consumer reporting agencies to which TD Bank reports.

159.     Within two years prior to the filing of this suit, by example only and without limitation, TD Bank violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete and/or permanently block the reporting of inaccurate information regarding the Plaintiff to one or more credit reporting agencies.

160.     As a result of the conduct, actions and inactions of TD Bank, the Plaintiffs suffered actual damages including, without limitation, loss of credit, costs associated with purchasing credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

161.     Plaintiffs have each suffered a concrete injury in fact that is directly traceable to TD Bank's conduct, and is likely to be redressed by a favorable decision in this action.

162.     TD Bank's conduct is also in violation of the Maine FCRA, 10 M.R.S.A. §1309(1), for failure to comply with the federal FCRA.

163.     TD Bank's conduct, action and inaction were willful, rendering TD Bank liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, TD Bank was negligent, entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

164.     The Plaintiffs are entitled to recover actual damages, treble or greater punitive damages, statutory damages, costs and attorney's fees from TD Bank in an amount to be determined by the Court pursuant to 10 M.R.S.A. §1310-C & D and 15 U.S.C.  §§1681n and o.

165.     Within two years prior to the filing of this suit, by example only and without limitation, SPS violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(A) and/or (B) by failing to fully and properly investigate the Plaintiffs' disputes of its credit reporting after receipt of notice of such disputes from Equifax and Experian and/or failing to review all relevant information

provided.

166.     Within two years prior to the filing of this suit, by example only and without limitation, SPS violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(C) by failing to accurately and completely report the results of a lawful investigation to Equifax and Experian after notice of a dispute including the fact that the account was disputed.

167.     Within two years prior to the filing of this suit, by example only and without limitation, SPS violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(D) by failing to report results of its investigation finding the information it had been reporting regarding Plaintiffs to be incomplete or inaccurate to all other consumer reporting agencies to which SPS reports.

168.     Within two years prior to the filing of this suit, by example only and without limitation, SPS violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete and/or permanently block the reporting of inaccurate information regarding the Plaintiffs to one or more credit reporting agencies.

169.     As a result of the conduct, actions and inactions of SPS, the Plaintiffs suffered actual damages including, without limitation, loss of credit, costs associated with purchasing credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

170.     Plaintiffs have each suffered a concrete injury in fact that is directly traceable to SPS's conduct, and is likely to be redressed by a favorable decision in this action.

171.     SPS's conduct is also in violation of the Maine FCRA, 10 M.R.S.A. §1309(1), for failure to comply with the federal FCRA.

172.     SPS's conduct, action and inaction were willful, rendering SPS liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the

alternative, SPS was negligent, entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

173.     The Plaintiffs are entitled to recover actual damages, treble or greater punitive damages, statutory damages, costs and attorney's fees from SPS in an amount to be determined by the Court pursuant to 10 M.R.S.A. §1310-C & D and 15 U.S.C.  §§1681n and o.

## COUNT FOUR: VIOLATION OF THE<br>BANKRUPTCY DISCHARGE INJUNCTION, 11 U.S.C. § 524<br>(TD BANK AND SPS)

174.     The Plaintiffs reallege and incorporate the preceding paragraphs as if fully set out herein.

175.     Defendant TD Bank's conduct violated the Bankruptcy Discharge Injunction, 11 U.S.C. § 524, enforced pursuant to 11 U.S.C. § 105, a discharge that Defendant TD Bank had knowledge of and was reminded of on multiple occasions.

176.     TD Bank's debt was paid in full in Plaintiffs' bankruptcy, any remaining personal liability on the note terminated when they received their bankruptcy discharge, and Plaintiffs had the right to expect a "fresh start" as contemplated by the Code.

177.     TD Bank participated in the Plaintiffs' bankruptcy case and had actual knowledge of the Plaintiffs' bankruptcy filings and discharge.

178.     TD Bank was repeatedly informed of its misconduct but failed to take any corrective action.

179.     Defendant TD Bank's conduct in violation of 11 U.S.C. § 524 includes, but is not limited to, initially failing and refusing to return the vehicle title after Plaintiffs' debt had been discharged, intentionally reporting to one or more credit reporting agencies a debt that had been discharged in Plaintiffs' bankruptcy and failing to correct that inaccurate information upon dispute. Defendant TD Bank's conduct toward Plaintiffs was unfair, coercive, harassing, willful, and knowing.

180.    As a result of the conduct and actions of Defendant TD Bank, Plaintiffs have suffered actual damages including, without limitation, loss of credit, costs associated with purchasing credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

181.    Defendant TD Bank's actions demonstrate willful and intentional violation of 11 U.S.C. § 524.

182.    Defendant SPS's conduct violated the Bankruptcy Discharge Injunction, 11 U.S.C. § 524, enforced pursuant to 11 U.S.C. § 105, a discharge that Defendant SPS had knowledge of and was reminded of on multiple occasions.

183.    SPS, as servicer for U.S. Bank as Trustee, participated in the Plaintiffs' bankruptcy case and had actual knowledge of the Plaintiffs' bankruptcy filings and discharge.

184.    Plaintiffs' personal liability on the Mortgage Note terminated when they received their bankruptcy discharge, and they had the right to expect a "fresh start" as contemplated by the Code.

185.    Defendant SPS's conduct in violation of 11 U.S.C. § 524 includes, but is not limited to, (1) delivering statements to Plaintiffs that included a balance due and a payment coupon, threatened legal action, and sought a payment of over $71,892.56 that increased each month, (2) calling Plaintiffs repeatedly regarding the property which had been surrendered in the bankruptcy and (3) reporting an inaccurate balance and other inaccurate information repeatedly on Plaintiff's credit reports and failing to correct that inaccurate information upon receipt of repeated disputes.  Defendant SPS's conduct toward Plaintiffs was unfair, coercive, harassing, willful, and knowing.

186.    SPS was repeatedly informed of its misconduct but failed to take any corrective action.

187.    As a result of the unceasing conduct and actions of Defendant SPS, Plaintiffs have suffered actual damages including, without limitation, loss of credit, costs associated with purchasing

credit reports, damage to their creditworthiness and credit score, marital strain, loss of sleep and other emotional and mental distress.

188.    Defendant SPS's actions demonstrate willful and intentional violation of 11 U.S.C. § 524.

189.    Plaintiffs are entitled to recover from Defendant TD Bank actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. §§ 524 and 105, and such other and further relief as this Court deems just and proper.

190.    Plaintiffs are entitled to recover from Defendant SPS actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. §§ 524 and 105, and such other and further relief as this Court deems just and proper.

## COUNT FIVE: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §1692e(8) AND MAINE FAIR DEBT COLLECTION PRACTICES ACT, 32 M.R.S.A. §11013(2)(H) (SPS)

191.    The Plaintiffs reallege and incorporate the preceding paragraphs as if fully set out herein.

192.    SPS is a debt collector pursuant to 15 U.S.C. §1692a and 32 M.R.S.A. §11012.

193.    The alleged debt at issue is a consumer debt pursuant to 15 U.S.C. §1692a and 32 M.R.S.A. §11012.

194.    As detailed above, SPS has violated 15 U.S.C. §1692e(8) and 32 M.R.S.A. §11013(2)(H) by communicating to one or more credit reporting agencies credit information regarding Plaintiffs which was known or should have been known to be false and failing to communicate the fact that disputed debts were disputed.

195.    Plaintiffs suffered a concrete injury in fact that is directly traceable to defendant's

conduct, and is likely to be redressed by a favorable decision in this action.

196.    As a result of the above violations, SPS is liable to the Plaintiffs in the sum of their actual damages, statutory damages, costs and attorney's fees.

WHEREFORE, Plaintiff demands judgment for actual, statutory, treble, and punitive damages against Defendants; for their attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted

**Archie and Marlene McGinley,**
By their attorney:

/s/ Andrea Bopp Stark
Andrea Bopp Stark
Molleur Law Office
419 Alfred Street
Biddeford, ME  04005-3747
207-283-3777
andrea@molleurlaw.com

Date:  September 21, 2016